## INJURY RESULTING FROM CARELESS MENDING OF A CHAIN.

Circuit Court of Cuyahoga County.

ERIE RAILROAD COMPANY v. NELLIE MCDONNELL, AS ADMINIS-
TRATOR OF THE ESTATE OF PATRICK MCDONNELL, DECEASED.*

Decided, January 16, 1906.

*Master and Servant—Negligence—Assumed Risk.*

Where the evidence shows conclusively that a servant familiar with
the nature of the work upon which he was engaged was present
while a broken chain was mended and saw how it was mended, and
the chain again broke at the mended place allowing a load to fall
upon and kill him, he must be deemed to have assumed the risk and
it is the duty of the trial court to direct a verdict for defendant.

*Cushing & Clarke,* for plaintiff in error.
*Meyer & Mooney,* contra.

WINCH, J.; HENRY, J., and MARVIN, J., concur.

This is a proceeding in error to reverse a judgment recovered
in the common pleas court by the defendant in error for the
wrongful death of her decedent by the alleged negligence of
plaintiff in error.

The petition, in effect, alleges that Patrick McDonnell, on the
day when he was killed, was working for the Erie Railroad Com-
pany as a common laborer on a pile driver, driving piles under
the direction of a foreman of said company; that in lifting
heavy logs into position to be driven as piles, he was furnished
a short chain to be hooked around the logs so that the lifting
rope might be attached; that this chain had been broken and
mended with wire in a careless and negligent manner; that while
one of the piles was being lifted into position by means of a
derrick and said imperfect and improperly repaired chain, "the
said chain and the said wire so as aforesaid used in the said

*Affirmed without opinion, *McDonnell* v. *Erie Railroad Co.,* 77 Ohio
State, 623.

improper repair thereof, through the said negligence of said foreman and the said defendants, suddenly parted, broke and gave way at the said point of the said improper repair thereof, thereby releasing and causing the said pile to fall upon, crush and kill the said decedent.''

The answer admits that the Erie company owned the pile driver machine and its appliances; that McDonnell was killed while engaged in driving piles by reason of the parting of said chain, but alleges that decedent knew, or by the exercise of ordinary care could have known, the condition of the chain which parted, but without objection continued to use it for the purpose for which it was being used at the time the accident occurred. It thus pleads that McDonnell assumed the risk attendant upon the use of the defectively mended chain, and it further alleges that his injury was caused and contributed to by his own negligence and the negligence of his fellow servants.

A reply filed by the plaintiff denies that McDonnell knew, or could have known the defective conditions of the chain and avers that he had no knowledge thereof.

It thus appears that this was an action brought by a servant against his master to recover for defects in the appliances used in the business and under the rule laid down in *Wood on the Law of Master and Servant,* 414, quoted with approval by Judge Minshall in the Norman case, 49 O. S., 598, 607, it was necessary for the plaintiff to establish three propositions:

1.  That the appliance was defective.

This is conceded by the pleadings.

2.  That the master had notice thereof, or knowledge or ought to have known.

This was established by the evidence, for it was shown that one Malmsten was a foreman in the employ of the company and in charge of the manner in which the work was being done at the pile driver by McDonnell and others, and that he knew of the defective mending of the chain and either did the mending himself or assisted McDonnell in the mending.

3.  That the servant did not know of the defect, and had not equal means of knowing with the master.

This proposition must be examined in the light of the case of *The Pennsylvania Company* v. *McCurdy,* 66 O. S., 118, the syllabus of which reads as follows:

"An employe experienced in the service in which he is engaged is conclusively held to appreciate the dangers which may arise from defects of which he has, or in the exercise of due care, might have due knowledge."

The evidence in this case shows that while McDonnell was a day laborer, he had been employed as such in and about pile drivers, using chains such as were used in this case and for the same purpose, for six or seven years off and on.   J. A. Smith, his former employer, testified to this and was uncontradicted. We do not think it would require any special knowledge or skill to enable a laborer to understand the nature and use of an ordinary chain, and its adaptability to the purpose for which it was furnished, but if it does McDonnell was clearly an "employe experienced in the service."

There remains, then, for inquiry the sole question: did McDonnell know of the defect, or did he have equal means of knowing with the master?

The record shows that the chain was broken while the men were at work; McDonnell and all the men knew that it was broken; they all stopped work and had nothing to do for from fifteen minutes to half an hour, until it was mended.   The claim was not taken away to a blacksmith for repair, but was mended on the spot with wire picked up on the dock and run twice through the links.   The links were of ½ inch iron; the wire was from 2-16 to 3-16 inches in thickness; two strands were of less strength than the iron; it is conceded that the mending was defective.

The plaintiff's witnesses testified that McDonnell was present when the repair was made.   Coyne (pp. 48 and 49):   "McDonnell was about 10 feet away—he saw the chain being fixed—he couldn't help but see it—he was standing there looking at all the operations."

Brooks (p. 113):   "The whole crew was there.   Q.   McDonnell was there?   A.   Yes, sir, the whole crew."

Cannon (p. 141) "McDonnell was standing near Mileke and Malmsten when they were making the repair, probably five feet or so away. (p. 166) McDonnell was there all the time when they were mending the chain, and we were all looking on. (p. 167) "Q. McDonnell was there all the time, he saw what was being done, he saw the chain was broken, didn't he? A. Yes, sir, he knew it.

"Q. Could he have helped knowing and seeing it? A. No, sir."

Sprague (p. 245): "McDonnell was right there when the chain was fixed."

Two of defendant's witnesses testified that McDonnell himself made the repair: Mielke (page 263) and Malmsten (page 285), when they started to work with the mended chain, McDonnell hooked it onto the log, or assisted in so doing.

We think the whole record shows conclusively, as indicated by the passages read and referred to, that McDonnell was aware of how the chain had been mended, and as the defect was patent and pertained to a simple ordinary tool, it obviously, on its face, suggested to him the question: Is this chain, as mended, strong enough? Will it lift this log weighing about a ton? If he made up his mind that it was strong enough, he acted upon his own judgment and assumed the risk of its breaking. If he thought it not strong enough, he should have refused to use it, for he was under no compulsion to go forward.

There is a common saying that a chain is only as strong as its weakest link. McDonnell knew this, and was called upon to examine the mended link before he proceeded. He had equal means with his employer of knowing about the defect. Such being our conclusion, it follows that the plaintiff failed to establish the third proposition above stated, and was not entitled to recover on the facts of the case.

Considerable criticism of the charge as given by the trial judge has been made by counsel for plaintiff in error, but we find the charge not open to the objections made to it, when considered as a whole. On the conceded, controlling facts of the

case, however, the trial judge should have directed a verdict for the defendant.

The judgment is therefore reversed because it is contrary to the law and the evidence, and proceeding to render the judgment which the trial court should have rendered, judgment is entered for the plaintiff in error.